IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK PRICE,                              )
                                         )
        Plaintiff,                       )
               v.                        )          Civil No. 3:22-cv-219
                                         )          Judge Stephanie Haines
MELISSA HAINSWORTH and                   )
TREVOR WINGARD,                          )
                                         )
        Defendants.                      )

**OPINION**

Presently before the Court is a Motion for Judgment on the Pleadings (ECF No. 75),

pursuant to Federal Rule of Civil Procedure 12(c), filed by Defendants Melissa Hainsworth

("Hainsworth") and Trevor Wingard ("Wingard") (collectively "Defendants"). Defendants argue

that the Court should enter judgment in Defendants' favor because Plaintiff's Complaint (ECF No.

1) states no cognizable claim. Defendants assert that there is no implied right of action under 42

U.S.C. § 1981 against state actors and that this deficiency cannot be cured by amendment because

the claims are time-barred. Plaintiff Mark Price ("Plaintiff") argues that his Complaint presents a

valid claim under Section 1981 but offers to amend his Complaint to cure the alleged deficiency.

Therefore, Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 80) is relatedly also

before this Court.

**I. Procedural History**[1]

---

[1] Plaintiff stated (without supporting documentation) that he had complied with all administrative requirements by filing a timely charge of racial discrimination with the Pennsylvania Human Relations Committee which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff further stated (without supporting documentation) that he had received a right to sue letter from the EEOC and filed this lawsuit within 90 days of receipt of the letter. ECF No. 1, ¶¶ 6, 7. Plaintiff initiated this civil action on November 28, 2022 (ECF No. 1).

Plaintiff's Complaint alleges ten counts against Defendants who are state actors[2] because they work for the Pennsylvania Department of Corrections ("Pa DOC"). Plaintiff sues Defendant Hainsworth in her individual capacity as Deputy Superintendent of Facilities Management and Acting Deputy Superintendent of the State Correctional Institution at Somerset ("SCI-Somerset") and sues Defendant Wingard in his individual capacity as Superintendent of SCI Somerset and Acting Regional Deputy Secretary. All counts against Defendants seek relief under three statutes -- Title VII, Section 1981, and the Pennsylvania Human Relations Act ("PHRA"). At Counts I-III, Plaintiff alleges unlawful harassment claims under Title VII, Section 1981, and PHRA. He states that Defendants' conduct was so severe and pervasive that it altered Plaintiff's working conditions and created a hostile working environment. At Counts IV-VI, Plaintiff alleges disparate treatment on the basis of race in violation of Title VII, Section 1981, and PHRA. He states he was treated differently than similarly situated white employees. At Counts VII-X, Plaintiff alleges constructive discharge under Title VII, Section 1981, and PHRA. Plaintiff "seeks remedies including but not limited to those contained in 42 U.S.C. § 1981[a](a)(1)[3] and (b)(1)[4] and requests

---

[2] "[D]eciding whether there has been state action requires an inquiry into whether "there is a sufficiently close nexus between the State and the challenged action of [Enterprise] so that the action of the latter may be fairly treated as that of the State itself." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995). Thus, a state actor may be an organization or an individual engaging in state activity and liability may be imputed to either entities or individuals. That said, the legal framework governing liability for entities and individuals differs.

[3] **(a) Right of recovery**
**(1) Civil rights**
In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act, and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent. 42 U.S.C.A. § 1981a (West)

[4] **(b) Compensatory and punitive damages**
**(1) Determination of punitive damages**
A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C.A. § 1981a (West).

2

compensatory damages in an unspecified amount, punitive damages, a Jury Trial, investigative costs, litigation costs, reasonable attorney's fees, pre and post judgment interest, as well as all other relief to which he may be entitled, whether legal or equitable." ECF No. 1, pp. 9, 11, 12.

Defendants filed an Answer and Affirmative Defenses (ECF No. 9) to the Complaint. Defendants generally denied Plaintiff's allegations but admit Hainsworth referred to Plaintiff as her "Shiny Major" though claim she did not have a racist motive. Defendants assert Plaintiff retired from employment in April 2018 and was not constructively discharged. Defendants put forth the following affirmative defenses, *inter alia*, that Plaintiff's claims "may be barred by the applicable statute of limitations," that all decisions and actions taken with respect to Plaintiff's employment were made for legitimate and non-discriminatory reasons, and that Defendants are entitled to all immunities and protections under the law. ECF No. 9, p. 11.

On January 22, 2025, Defendants filed a Motion for Summary Judgment (ECF No. 41). Plaintiff filed a Response in Opposition (ECF Nos. 52-54). Defendants filed a Counterstatement of Facts (ECF No. 56). On January 29, 2026, United States Circuit Judge D. Brooks Smith, sitting by designation, issued a Memorandum Order of Court (ECF No. 57) which denied in part and granted in part Defendants' Motion for Summary Judgment. Defendants' Motion was denied as to Count II against Hainsworth for hostile work environment under Section 1981 and as to Count VIII against both Hainsworth and Wingard for constructive discharge under Section 1981. Defendants' Motion for Summary Judgment was granted as to all remaining Counts. Therefore, Counts I-VII and IX were dismissed against Wingard with prejudice and Counts I, III-VII, and IX were dismissed against Hainsworth with prejudice. The remaining claims at Counts II and VIII were pled under 42 U.S.C. § 1981 which Defendants now assert are not cognizable claims. The Court held an in-person pretrial conference on July 28, 2026 (ECF No. 82), in which the Court

heard oral argument on the pending Motion for Judgment on the Pleadings (ECF No. 75) and pending Motion for Leave to Amend (ECF No. 80).  These matters are ripe for the Court's disposition.

## II. Factual Background[5]

Plaintiff initiated this employment discrimination case by filing a Complaint (ECF No. 1) against Hainsworth, the Pennsylvania DOC's Deputy Superintendent of Facilities Management, and acting Superintendent of SCI-Somerset, and Wingard, Superintendent of SCI-Somerset and Acting Regional Deputy Secretary.  Plaintiff asserts that Defendants discriminated against him based on his race (African-American) in violation of Title VII, Section 1981, and PHRA, which eventually led to Plaintiff's constructive discharge in April 2018.

Plaintiff began working for the Pa DOC in 1994.  ECF No. 1, ¶ 12.  In 2015 he was promoted to Major and transferred from SCI-Greene to SCI-Somerset, where he then worked under Hainsworth.  ECF No. 1, ¶¶ 12, 14.  Defendant Hainsworth continually referred to Plaintiff as her "Shiny Major" though Plaintiff asked her to stop and told both Defendants that he took the adjective "Shiny" as a derogatory reference to his race.  ECF No. 1, ¶¶ 15-19.  Hainsworth continued to refer to Plaintiff as her "Shiny Major" directly to him as well as in front of other employees, and when talking about Plaintiff to other employees.  Plaintiff complained to Wingard about Hainsworth's use of the term "Shiny Major," but Wingard took no action.  ECF No. 1, ¶¶ 17, 20.  This treatment continued on a daily basis and throughout the period of time Plaintiff worked under Hainsworth.  ECF No. 1, ¶ 19.  Plaintiff also alleges Hainsworth continuously referred to Black/African-American inmates to Plaintiff as "your people."  ECF No. 1, ¶ 22.  Plaintiff

---

[5]  All facts are derived from Plaintiff's Complaint (ECF No. 1) and are undisputed unless otherwise noted.  Defendants state, "Defendants vehemently dispute Plaintiff's allegations.  However, for purposes of [the Motion for Judgment on the Pleadings] *only*, Defendants will accept as true all well-pled factual allegations set forth in the Complaint."  ECF No. 76, p. 2 fn 1.

4

interpreted these references to be racist and asked Hainsworth to stop; Hainsworth did not stop making such references. ECF No. 1, ¶¶ 25-26.

In November 2017, Plaintiff was placed by Pa DOC Central Office into the position of Acting Deputy, but Defendants demoted him back to Major two months later. ECF No. 1, ¶ 30-31. Plaintiff alleges Hainsworth then stated to him, "You and your people can't get the job done." ECF No. 1, ¶ 32. In the meantime, Wingard was promoted to Acting Regional Deputy Secretary and relocated to Central Office in Harrisburg, where he worked with two Black/African American superiors. ECF No. 1, ¶ 34. Plaintiff alleges that Hainsworth, now the Acting Superintendent of SCI-Somerset, wondered out loud how Wingard was fairing with "those people". ECF No. 1, ¶ 35. When Plaintiff asked who Hainsworth meant by "those people", she stated, "[B]lacks," meaning the Black Pa DOC employees. ECF No. 1, ¶ 36. Plaintiff described other treatment he was subjected to by Hainsworth to include meaningless assignments and tasks and receiving unsubstantiated poor marks on his evaluations. ECF No. 1, ¶ 37.

Plaintiff also alleges he learned an inmate was intent on killing a Correctional Officer named Sergeant Mark Baserman ("Baserman") at SCI-Somerset. ECF No. 1, ¶ 39. Plaintiff informed Wingard of the fatal plan and said that Central Office in Harrisburg should be immediately notified. ECF No. 1, ¶ 40. Plaintiff claims that Wingard stated, "[I]f you repeat to anyone what you just told me, you and I will have a meeting at Central Office, and you will not fare well." ECF No. 1, ¶ 41. That said, Plaintiff cautioned Baserman to be careful interacting with inmates. ECF No. 1, ¶ 43. When Hainsworth learned that Plaintiff had warned Baserman, she reprimanded Plaintiff. ECF No. 1, ¶ 44. Wingard inquired with staff to check to see if Plaintiff had called Central Office to warn of the impending threat to Baserman. ECF No. 1, ¶ 45. Days later an inmate attacked and brutally murdered Baserman. ECF No. 1, ¶ 42. Plaintiff asserts that

had he been permitted to notify Central Office of the threat, thereby preventing the attack and murder of Baserman, Plaintiff would have advanced his career; he alleges that Defendants did not want him to advance because of his race.   ECF No. 1, ¶¶ 45.   After this incident, Plaintiff resigned/retired from the DOC.  ECF No. 1, ¶ 46.

## III.  Standard of Review

A party may move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains ... and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). When deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).  "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (citing *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010)).  "In considering a motion for judgment on the pleadings, a court must accept all allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Id*. at 417-18; *see also Allah v. Al-Hafeez,* 226 F.3d 247, 249 (3d Cir. 2000).

## IV.  Discussion

As stated above, Defendants' Motion for Judgment on the Pleadings (ECF No. 75) states that the remaining claims in this case are not plausible.  Defendants claim that 42 U.S.C. § 1981

6

("Equal Rights under the Law") alone cannot be brought against state actors such as Hainsworth and Wingard in civil rights cases seeking damages. They also state that Plaintiff cannot amend his pleadings to cure this deficiency because the claims are time-barred. ECF No. 85, p. 1. Plaintiff vigorously opposes the Motion for Judgment on the Pleading. Procedurally, Plaintiff states that the Motion should have been raised at the Rule 12 stage or even at the Summary Judgment stage of proceedings and is now waived. ECF No. 83, p. 1. He claims at this late stage this Motion interferes with his preparation for trial and prejudices him. ECF No. 83, pp. 2-3. Plaintiff asserts Defendants are acting in bad faith and that Defendants have exhibited a pattern of gamesmanship. ECF No. 83, pp. 3-5.

Addressing the procedural defenses to the Motion for Judgment on the Pleadings, Defendants state that the Motion is timely as it may be brought any time before trial, provided that it does not delay trial. ECF No. 76, p. 5; Fed. R. Civ. P. 12(c). This Motion was filed on July 9, 2026, more than five weeks before the scheduled August 17, 2026, trial date. The Court finds this as an acceptable time to bring the Motion prior to trial, and likewise acknowledges that such motions may even be brought during trial. Thus, Defendants have not waived the argument presented in the Motion for Judgment on the Pleadings.

In the interest of judicial economy, a motion on a dispositive issue must be addressed even when presented five weeks before trial as was done here. Certainly, basic logic dictates that the Court handle a motion that could dispose of the case prior to allowing the parties to fully prepare for trial, summonsing jurors, conducting voir dire, calling witnesses, and hearing arguments. Should the Court deny the Motion now for timeliness, this same potentially dispositive motion could again be presented in the midst or at the end of trial.[6] The arguments made by Defendants

---

[6] At the pretrial conference, Plaintiff's attorney would not consent to a continuance of trial noting the language in Fed. R. Civ. P. 12(c) which states that a Motion for Judgment on the Pleadings should not create a delay of trial. The

in this vein are persuasive. *See* ECF No. 76, pp. 6-7. It is the Court's duty to present for trial only those cases in which the Court has decided all dipositive legal issues.

Both parties have had to divest their energies to attend to the pending legal issues while working towards trial. Plaintiff asserts prejudice, but the time invested in the pleadings at issue affects both sides and the Court finds that the importance of addressing the issues outweighs any perceived prejudice resulting from the Motion.[7] The Court also notes that the Parties were given an opportunity to continue the trial to accommodate trial preparations. Plaintiff again declined a continuation. *See* fn 6, herein. The Court perceives an argument of prejudice somewhat disingenuous when Plaintiff declines an offer to allow more time for preparation because he wants to preserve an appeal on the "delay of trial" language in Section 12(c). As for the argument asserting Defendants' bad faith and dilatory behavior, the Court is not persuaded by Plaintiff's arguments.[8]

### A.  Whether 42 U.S.C. § 1981 is a Stand-Alone Cause of Action Against State Actors

Defendants allege that there is no express right of action articulated in Section 1981 and the Court may not imply a cause of action under Section 1981 against state actors. ECF No. 76, p. 1.[9] They also state that *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989) and *McGovern*

---

Court notes this catch-22 situation as it applies to Plaintiff's request for leave of court to file an amended complaint (ECF No. 80). Allowing Plaintiff's amendment would necessitate a continuance to allow Defendants to respond, with such continuance being objected to by Plaintiff. That said, this Court endeavors to decide this case without delay to avoid prejudice to the Parties.

[7]  Plaintiff's argument of prejudice also fails because even if the substantive issue of 1981 were to have been raised earlier in the case, Plaintiff could not have cured his pleading because the statute of limitations had expired at the outset. *See* Statute of limitations discussion *supra*.

[8]  The Court notes the turnover of representation of Defendants in this case and recognizes that the current attorneys entered their appearances on March 10, 2026 (ECF No. 59) (Attorney Nanden) and on July 2, 2026 (ECF No. 70) (Attorney Williams).

[9]  Section 1981 reads as follows:
  **(a) Statement of equal rights**

*v. City of Philadelphia*, 554 F.3d 114, 115, 116-17 (3d Cir. 2009) ("In this appeal we consider whether a private right of action against state actors can be implied under 42 U.S.C. § 1981. We join five of our sister circuits in holding that it cannot.") definitively found that there is no Section 1981 stand-alone claim against state actors. ECF No. 76, p. 1. Defendants allege that to invoke the protections of Section 1981, Plaintiff must also bring suit under 42 U.S.C. § 1983.[10]

Plaintiff argues there is a dispositive distinction between *Jett* and *McGovern* and this case. He states those cases were brought against municipalities and Plaintiff is suing individual employees and therefore the cases are not influential for this Court. ECF No. 83, p. 6. This Court disagrees.

*Jett* was a lawsuit brought by a former athletic director and head football coach against a public high school – a state actor. Jett, under Sections 1981 and 1983, alleged discrimination stating that he was reassigned job duties on the basis of race. Jett sued the Dallas Independent

---

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
**(b) "Make and enforce contracts" defined**
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
**(c) Protection against impairment**
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.
42 U.S.C.A. § 1981 (West).

[10] Section 1983 reads as follows:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, *shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,* except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
42 U.S.C.A. § 1983 (West) (emphasis added).

9

School District ("DISD"), a municipality.  The Supreme Court tackled various issues in this case which included issues unique to suing a municipality (i.e., respondeat superior liability), which don't apply here.  Nevertheless, as found in *Jett*, state actor defendants can be an entity or an individual in discrimination cases.  Jett alleged that DISD, acting through state actor individuals, discriminated against Jett on the basis of race in violation of 42 U.S.C. §§ 1981 and 1983.  In reaching its conclusion, the *Jett* Court articulated at various times throughout the opinion that Section 1983 is the statute by which a litigant must sue and seek remedies for violations of law under Section 1981.

"Section 1983 provides an explicit remedy in damages which, with its limitations on municipal liability, Congress thought "suitable to carry ... into effect" the rights guaranteed by § 1981 as against state actors." *Jett*, 491 U.S. at 733.

> Our conclusion that the express cause of action for damages created by § 1983 constitutes the *exclusive federal remedy* for violation of the rights guaranteed in § 1981 by state governmental units and finds support in our decision in *Brown v. GSA,* 425 U.S. 820 (1976) (emphasis added).
> ....
> In *Brown,* as here, while Congress has not definitively spoken as to the relationship of § 1981 and § 1983, there is very strong evidence that the 42d Congress which enacted the precurser of § 1983 thought that it was enacting the first, and at that time the only, federal damages remedy for the violation of federal constitutional and statutory rights by state governmental actors.

*Jett*, 491 U.S. at 733-734.

In *McGovern,* the plaintiff was a Caucasian male hired by the City of Philadelphia as an Administrative Support Specialist.  He sued the City alleging race discrimination for his termination in violation of 42 U.S.C. § 1981.  The City moved to dismiss the case stating that Section 1981 does not provide a cause of action, express or implied, against state actors.  McGovern was not successful in his claim against the City (it turned on the law of *Monell v. New*

*York Department of Soc. Services*, 436 U.S. 658 (1978)) for reasons not pertinent in this case against individual actors. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009). Still. the indisputable rule of law laid out in *McGovern* applies here.

> It is not the province of a federal court to confer rights where statutory language is silent, or to 'engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide.' *Am. Trucking Ass'n, Inc. v. Del. River Joint Toll Bridge Comm'n*, 458 F.3d 291, 302 (3d Cir.2006) (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981)). Congress, in promulgating § 1983 over a century ago, established that section as the *exclusive remedy* for violations of § 1981 by state actors. Nothing in the subsequent history, including the amendments to the 1991 Act, changed that remedial scheme. '[W]hatever the limits of the judicial power to imply or create remedies, it has long been the law that such power should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute.' Accordingly, we join five of our sister circuits in holding that no implied private right of action exists against state actors under 42 U.S.C. § 1981. We affirm the District Court's grant of the City's motion to dismiss.

*McGovern*, 554 F.3d at 121–22 (emphasis added). The Supreme Court and the Third Circuit have established, through *Jett* and *McGovern*, that § 1983 is the <u>exclusive</u> <u>remedy</u> for violations of § 1981 by state actors. This Court cannot and will not ignore this clear precedent.[11]  Plaintiff's distinction drawn between this case and *Jett* and *McGovern* is unavailing.[12]  Likewise, Plaintiff's reliance on model jury instructions to bolster his assertion that Defendants are properly sued under Section 1981 is also unfounded.

---

[11] The Court acknowledges Plaintiff's demand for damages under 42 U.S.C. § 1981a(a)(1) and (b)(1) and the language provided therein.  But the Court cannot ignore the explicit guidance provided by the Third Circuit and the Supreme Court that Section 1983 must be pled to obtain relief and remedy.

[12] Defendants provided the Court with another case at the pretrial conference which included an individual state actor defendant in *Booth v. Drissell, et al.*, No. 23-3004, 2024 WL 3811624 (3d Cir. Aug. 13, 2024).  The *Booth* Court stated, "The District Court noted in the memorandum opinion supporting its order that Booth's claims under 42 U.S.C. § 1981 were defective as a matter of law because, as we held in *McGovern v. City of Philadelphia* …, that statute contains no express or implied cause of action against state actors."  Plaintiff, in his written response to the *Booth* case (ECF No. 86), failed to distinguish or defeat the holding in *Booth*.  *Booth* relied upon the principles set forth in *McGovern*, as does this Court in the instant case.

11

Plaintiff also asserts a public policy argument that the Court should rule in Plaintiff's favor in the spirit of the purpose of the Sections 1981 and 1983 legislation, to eradicate the "badges of slavery" for African-American/Black people.  He further states that these laws were enacted to expand and strengthen Plaintiff's rights and remedies under Title 42.  While this Court recognizes and appreciates this public policy argument, precedential case law dictates that 42 U.S.C. § 1981 may not stand alone in a discrimination claim against state actors and that Section 1983 must be asserted as part of the claim.  While the compelling importance of civil rights claims is obvious, Plaintiff has failed to assert the proper and cognizable basis for his civil action.  This Court cannot ignore procedural guardrails put in place by Congress, the Supreme Court, and the Third Circuit that safeguard the process by which litigants may bring meritorious claims.  To do so would open the floodgates for claims that could not be properly defended and would create procedural chaos thereby diminishing the Court's ability to fairly adjudicate cases honoring the premise for which the statutes stand.

Finally, contrary to Plaintiff's request, the Court declines to sua sponte include and insert into Plaintiff's "Wherefore" clauses (which state Plaintiff seeks "all other relief to which he may be entitled, whether legal or equitable") a legal statute (42 U.S.C. § 1983) which is nowhere provided in the pleadings.[13]  Furthermore, it's difficult to find that Plaintiff intended to capture Section 1983 in his broad "Wherefore" language when he orally argued to the Court that Section 1983 is unnecessary to his case.

### B.  Whether the Court Should Allow Amendment to the Complaint

---

[13] While the Court may be flexible with pro se pleadings, it is difficult to make those same concessions for a seasoned attorney with many years of civil litigation experience.

While Plaintiff vigorously asserts that Section 1981 is sufficient as a stand-alone claim, he nevertheless "in an abundance of caution" and "in an abundance of hyper technicality" moved for leave to amend his Complaint to add 42 U.S.C. § 1983 as a legal basis for the cause of action and remedies. ECF No. 80, p. 2, ECF No. 83, p 11. Plaintiff acknowledges that under Federal Rule of Civil Procedure 15, leave to amend shall be freely given. ECF No. 83, p. 11. Plaintiff also asserts that Defendants may not raise a statute of limitations defense to this amendment because the defense has been waived and it was not properly pled in the first instance. ECF No. 83, p. 11. He states that the use of "may" in the affirmative defense statement in Defendants' Answer makes the affirmative defense not affirmatively plead.

As an initial matter, the Court finds that Defendants' affirmative defense which read, "Plaintiff's claims may be barred by the applicable statute of limitations," ECF No. 9, p. 11, was properly presented in Defendants' Answer to preserve the statute of limitations defense. This statement clearly alerted Plaintiff to the existence of the possible issue at trial. Under the liberal standard of notice pleading that applies to affirmative defenses, the Court finds Defendants' pleading to be sufficient to "aler[t] the adversary to the existence of the issue for trial." *Malibu Media, LLC v. Does 1*, No. CIV.A. 12-2078, 2013 WL 1702549, at *4 (E.D. Pa. Mar. 6, 2013) (citing *Tyco Fire Products LP v. Victaulic Co.,* 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011).

> (c) Affirmative Defenses. (1) *In General.* In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: • statute of limitations…. (d) Pleading to Be Concise and Direct… (1) *In General.* Each allegation must be simple, concise, and direct. No technical form is required.….(e) Construing Pleadings. Pleadings must be construed so as to do justice.

Fed. R. Civ. P. 8.

Defendants provided three arguments in their Opposition to the Motion for Leave to file an Amended Complaint (ECF No. 85).[14]  Defendants state that the proposed amendment presents a new claim that necessitates a response from Defendants; Defendants state that Plaintiff's request to amend the Complaint to add a Section 1983 claim would be time-barred as it is outside the 4-year statute of limitations; and, Defendants state that Plaintiff is not eligible for equitable tolling. ECF No. 85, pp. 3-4; ECF No. 76, p. 11.  This Court agrees with Defendants on all three points.

First, at the pretrial status conference, Plaintiff suggested that the Court not allow Defendants to respond to an amended complaint, should it be allowed by the Court, as the new pleading only would add the new statute (42 U.S.C. § 1983) and does not change the facts and legal premise.  In Defendants' Opposition to Amendment (ECF No. 85), they counter that to add the Section 1983 claim to the Complaint is part of the cause of action and the mechanism by which the remedy is applied.  ECF No. 85, p. 5.  In other words, Section 1983 provides the right and the remedy for Plaintiff's claim.  This Court finds that adding Section 1983 to the Complaint is a substantive change to the pleadings that warrants a response from Defendants.  Plaintiff's suggestion to disallow a response is improper and contravenes all aspects of procedure and fairness.

Second, this Court cannot ignore the inevitable procedural outcome of Plaintiff's proffered amendment.  To allow an amendment would be futile.  Defendants would rightly be permitted to respond to a new Complaint and would assert a statute of limitations defense, as they orally argued they would, and which this Court knows to be valid.  Pursuant to 28 U.S.C. § 1658(a), "Except as

---

[14]  Defendants also countered, "[T]he Court does not need to reach the issue of whether Defendants waived the statute of limitations defense because: (1) there is no valid claim currently before the Court; and (2) Defendants would be entitled to assert the statute of limitations as a defense to any attempt by Plaintiff to correct his deficient pleading." ECF No. 76, fn. 5. In an exercise of due diligence, the Court will thoroughly address the issue of waiver of the statute of limitations defense.

otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."[15]  It is the Court's understanding that Plaintiff left employment with the Pa DOC on April 20, 2018.  ECF No. 83, p. 21.  Using the latest date of alleged discrimination as the constructive discharge of April 20, 2018, Plaintiff had a deadline to file this civil action by April 20, 2022.  Plaintiff's initial Section 1981 Complaint was outside the statute of limitations deadline of April 20, 2022, because it was filed more than seven months late on November 28, 2022.  Clearly an amended complaint filed now would be well outside the allowable period for filing such a claim.

> Federal Rule of Civil Procedure 15 'embodies a liberal approach to pleading.' 'The clear preference embodied in Rule 15 is for merits-based decision making.' We 'should freely give leave [to amend] when justice so requires.' But we should not grant leave if the proposed amendment is futile. Amendment is futile if the amendment 'would not be able to overcome the statute of limitations.' 'Where a claim is barred by the statute of limitations, amendment is only permitted if the proposed amended complaint relates back to the date of the original pleading pursuant to Rule 15(c).'

*Robinson v. Se. Pennsylvania Transp. Auth.*, 572 F. Supp. 3d 136, 142–43 (E.D. Pa. 2021).

> (c) Relation Back of Amendments.
> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading;….

Fed. R. Civ. P. 15.

---

[15]  Plaintiff states that a Complaint was filed with the Pennsylvania Human Relations Committee within 120 days of Plaintiff's departure from employment. ECF No. 83, p. 21.  There is no documentation of record of the originating filing at PHRC or EEOC.  Absent those date markers the Court relies on the four years statute of limitations which commences after the date a discriminatory act occurs to file a civil rights violation in federal court. *See* 28 U.S.C. § 1658.

The addition of Section 1983 to the Complaint relates back to the original Complaint because it asserts a claim that arose out of the conduct set forth in the original pleading. The standard four-year statute of limitations for federal civil actions is subject to the relation-back doctrine under Federal Rule of Civil Procedure 15. Thus, under Federal Rule of Civil Procedure 15(c) the amended complaint relates back to the date of the original Complaint. *See Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004). However, the original Complaint is untimely in its own right having been filed four years and seven months after Plaintiff left employment of the Pa DOC. As such, this Court must determine whether Defendants having raised the affirmative defense of time-bar due to the statute of limitations in their Answer, but not having otherwise plead it at any other stage of litigation thus far, have waived their right to do so.[16]

"Parties are generally required to assert affirmative defenses early in litigation, so they may be ruled upon, prejudice may be avoided, and judicial resources may be conserved." *Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002). "The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 350 (1971). "But it does not follow that a limitations defense can be raised at any time. Consistent with the purpose of Rule 8(c), courts require that defendants assert a limitations defense as early as reasonably possible." *Robinson v. Johnson*, 313 F.3d 128, 135–36 (3d Cir. 2002); *see also Davis v. Bryan,* 810 F.2d 42, 44 (2d Cir.1987) ("The statute of limitations is an affirmative defense under Fed.R.Civ.P. 8(c) that must be asserted in a party's responsive pleading 'at the earliest possible moment' and is a personal defense that is waived if not promptly pleaded."). As already stated,

---

[16] While Defendants pled the statute of limitations as an affirmative defense in their Answer, they did not present such defense in a motion to dismiss or at the summary judgment stages.

Defendants raised a valid affirmative defense of the statute of limitations in their Answer, which is unquestionably early in the litigation, and in this case, was the first responsive pleading filed by Defendants. Plaintiff has been on notice of this possible defense at the near outset of the case.

The Court now seeks to resolve whether a waiver occurs when the affirmative defense of statute of limitations is plead at the outset of the litigation but not plead again in the earlier stages of dispositive motions. The Court refers to *Bradford–White Corp. v. Ernst & Whinney,* 872 F.2d 1153 (3d Cir.1989), as instructive. The *Bradford-White* Court found a limitations defense was waived where it was pleaded in the answer but was not pursued again before or at trial. After the trial and jury verdict, the defendant then attempted to raise a statute of limitations defense in post-trial motions. *See id.* at 1154. The Court did not permit the defendant to raise the statute of limitations defense post-trial, finding that "it would be grossly unfair to allow a plaintiff to go to the expense of trying a case only to be met by a new defense after trial." *Id.* at 1161. The same fact scenario is not present here. In the instant case, Defendants have articulated pre-trial, both verbally and in pleadings, that they intend to raise the statute of limitations defense and the Court deems the defense to be valid as to the original Complaint and as to any amended complaint that relates back to the original Complaint.

> [The caselaw] reflect[s], in one form or another, attempts by the courts to keep the consideration of affirmative defenses consistent with at least the purpose, if not necessarily the language, of Rule 8(c). Affirmative defenses must be raised as early as practicable, not only to avoid prejudice, but also to promote judicial economy. If a party has a successful affirmative defense, raising that defense as early as possible, and permitting a court to rule on it, may terminate the proceedings at that point without wasting precious legal and judicial resources.

*Robinson v. Johnson*, 313 F.3d 128, 137 (3d Cir. 2002). The Court finds that judicial economy is served by recognizing Defendants have raised the affirmative defense of statute of limitations that has not been waived and notes its likely success.

17

Third, Plaintiff defends against the missed deadline under the statute of limitations by making a weak equitable tolling argument related to a 2020 Administrative Order issued by then-Chief Judge Hornak tolling criminal case deadlines for the United States Attorney's Office during the COVID-19 Pandemic. ECF No. 83, p. 11. He also states that extraordinary circumstances existed during the pandemic, both personally and professionally, so that the Court should equitably toll the statute of limitations. ECF No. 83, pp. 11-12. The Court finds these arguments unpersuasive. The then-Chief Judge Hornak's Order did not apply to civil cases and this Court will not make a perceived amendment to that Order at this time to somehow now include this civil case in the provisions of a past Administrative Order. Likewise, the Court remained open during all times of the pandemic to accept and address filings. While the Court sympathizes with the difficulty the pandemic presented to businesses and individuals, it cannot excuse Plaintiff for a more than 7-month missed deadline that could have been avoided with due diligence.[17]

Finally, the Court acknowledges Plaintiff's public policy argument that favors deciding cases on the merits instead of technicalities. *See Hill v. Williamsport Police Dep't,* 69 F.App'x 49, 51 (3d Cir.2003) ("Our Court does not favor entry of defaults or default judgments', ... as it prefers adjudications on the merits."); *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194–95 (3d Cir.1984) (stating the court's preference for deciding cases on the merits over default judgment); *Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir.2004) ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable."). The Court does not find the omission of a necessary statute to establish a plausible claim or the delinquency of a filing by more than seven months to be mere technicalities. These substantive and procedural shortcomings are fatal to Plaintiff's case.

---

[17] The Court finds Defendants' argument on this topic persuasive. *See* ECF No. 81, pp. 5-9

18

## V.  Conclusion

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings (ECF No. 75) is GRANTED.  Plaintiff's Complaint (ECF No. 1) is dismissed with prejudice.  Plaintiff's Motion for Leave to Amend (ECF No. 80) is DENIED.  All other pending motions are also dismissed including Motions in Limine (ECF Nos. 68, 69).  The trial set to begin on August 17, 2026, is hereby cancelled.

An appropriate Order will be entered.


Dated:  August 3, 2026

*Stephanie L. Haines*
Stephanie L. Haines
United States District Judge